NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0529n.06
Filed: August 28, 2008

Case Nos. 06-2643, 06-2644

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL BAZZETTA, et al., | ) | |
| | ) | |
| Plaintiffs-Appellees/Cross-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KEITH MCGINNIS, Director of Michigan | ) | DISTRICT OF MICHIGAN |
| Department of Corrections; MICHIGAN | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendants-Appellants/Cross- | ) | |
| Appellees. | ) | |

BEFORE:  MARTIN and BATCHELDER, Circuit Judges; JORDAN,[*] District Judge.

ALICE M. BATCHELDER, Circuit Judge.  Plaintiffs-Appellees/Cross Appellants ("Plaintiffs"), a class of prisoners and their potential visitors, first sued Defendants-Appellants/Cross-Appellees the Michigan Department of Corrections ("MDOC") and its director (collectively "Defendants") in 1995 to prevent the enforcement of newly passed regulations regarding prison visitation.  The case has been back and forth among the district court, this court, and the Supreme Court and is now back before us to decide whether the district court abused its discretion in upholding an award to Plaintiffs of $223,991.92 in interim attorney's fees but vacating

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

an award to Plaintiffs of $570,167.35 in additional attorney's fees. Because we conclude that the district court did not abuse its discretion, we **AFFIRM**.

## I. BACKGROUND

The Supreme Court, in *Overton v. Bazzetta*, 539 U.S. 126, 129-31 (2003), and this court, in *Bazzetta v. McGinnis*, 430 F.3d 795, 797-98 (6th Cir. 2005) ("*Bazzetta III*"), sufficiently recounted the substantive facts of this case. Nonetheless, we will briefly highlight some of the facts figuring substantially in our analysis.

In 1995 MDOC enacted regulations regarding both contact and noncontact inmate visits, requiring each prisoner to provide a list of potential visitors (other than attorneys on official business and qualified members of the clergy) and to receive prior prison approval for those visits. *Overton*, 539 U.S. at 130. The regulations also put restrictions on the visitation privileges of minors, non-custodial children, and former prisoners, and put a two-year ban on visitors for all inmates found guilty administratively of two or more substance abuse offenses. *Id*. Reinstatement of visitation privileges for prisoners who committed substance-abuse violations was solely within the discretion of the warden. *Bazzetta III*, 430 F.3d at 797. Throughout the torturous litigation MDOC lifted certain regulations and revised still others. Moreover, Plaintiffs obtained temporary injunctive relief that prevented MDOC from enforcing its regulations from May 2002 until August 2003 and then again from January 2004 until October 2006.

Of particular importance to our analysis is the procedural history of this case, which has now gone on for 13 years. Plaintiffs initially brought suit to prevent MDOC from enforcing its prison-visit regulations. The district court denied Plaintiffs relief, *Bazzetta v. McGinnis*, 902 F. Supp. 765 (E.D. Mich. 1995), because the new regulations applied only to contact visits. We affirmed, *Bazzetta*

2

*v. McGinnis*, 124 F.3d 774 (6th Cir. 1997) ("*Bazzetta I*"), but issued a supplemental opinion,

*Bazzetta v. McGinnis*, 133 F.3d 382 (6th Cir. 1998), to make clear that we concluded only that the

regulations were constitutional as applied to contact visits. After it became clear that MDOC was

applying the new regulations to noncontact visits, Plaintiffs moved to reinstate the case; the district

court granted the motion on July 2, 1998. The district court, after a bench trial, ruled in favor of

Plaintiffs, holding that the regulations were unconstitutional as applied to noncontact visits, *Bazzetta*

*v. McGinnis*, 148 F. Supp.2d 813 (E.D. Mich. 2001). We affirmed that decision, *Bazzetta v.*

*McGinnis*, 286 F.3d 311 (6th Cir. 2002) ("*Bazzetta II*"), and the district court issued an order of

compliance enjoining Defendants from implementing the new regulations. Thereafter, we denied

Defendants' motion to stay the injunction and the Supreme Court affirmed. Ultimately, however,

the Supreme Court overruled our decision in *Bazzetta II*, holding that MDOC's regulations did not

violate Plaintiffs' substantive due process rights or their rights under the First and Eighth

Amendments.[1] *Overton*, 539 U.S. at 131, 137.

On June 27, 2002, between our ruling in *Bazzetta II* and the Supreme Court's decision in

*Overton*, the district court issued an order granting Plaintiffs' request for interim attorney's fees in

the amount of $223,991.92.[2] Defendants paid those fees without seeking a rehearing or appealing

the district court's order. Instead, Defendants sent Plaintiffs' attorney a letter stating in relevant part:

Defendants are prepared to agree to the following:

1. Defendants will send the Court a check in the amount of $223,991.92, which represents the attorney fees and costs that are not in dispute.

---

[1]The Court did not address the district court's determination that the regulations also violated Plaintiffs' procedural due process rights.

[2]These fees are the subject Defendants' appeal.

2. Defendants request that this money be placed in an escrow account by the Court until such time as the United States Supreme Court has ruled on Defendants' Petition for Writ of Certiorari.

Defendants submit that this proposal is the only way to insure that, in the event Defendants prevail in their appeal to the Supreme Court, the taxpayers of the State of Michigan are reimbursed for any attorney fees and costs wrongly paid to Plaintiffs. Please let me know immediately if this proposal is satisfactory to Plaintiffs.

Plaintiffs never responded to Defendants' proposal and Defendants never filed with the district court a motion to put the money in escrow. Nonetheless, Defendants paid those fees on July 8, 2002. On August 19, 2002, the district court issued another order granting to Plaintiffs additional attorney's fees in the amount of $570,167.35.[3] Instead of simply paying this additional fee award, Defendants posted a bond and appealed. After the Supreme Court's *Overton* ruling Defendants moved this court for peremptory reversal of the order to pay the additional fees. A panel of this court denied that motion so that the district court could consider the question, *Bazzetta v. McGinnis*, 79 Fed. App'x 161 (6th Cir. 2003), and a separate panel remanded the case to the district court for further proceedings in light of the Supreme Court's decision, *Bazzetta v. McGinnis*, 73 Fed. App'x 842 (6th Cir. 2003). *Bazzetta III*, 430 F.3d at 799-800. On remand, the district court denied Defendants' motions for summary judgment and to dissolve the injunctive order of compliance, holding that Plaintiffs were still a "prevailing party" and were entitled to some attorney's fees, and concluding that the Supreme Court's decision in *Overton* did not disturb the district court's procedural due process conclusion. Defendants appealed and we reversed, holding that the district court's procedural due process ruling was inconsistent with *Overton*. *Bazzetta III*, 430 F.3d at 805.

---

[3]These fees are the subject of Plaintiffs' cross appeal.

On November 20, 2006, the district court issued an opinion and order denying Defendants' request to vacate its June 27, 2002, order granting Plaintiffs interim attorney's fees — the $223,991.92[4] — but granting Defendants' request to vacate its August 19, 2002, order awarding Plaintiffs additional attorney's fees — the $570,167.35. Defendants timely appealed to this court the first part of the ruling, and Plaintiffs timely appealed the second part of the ruling.

## II. STANDARD OF REVIEW

We review for abuse of discretion a district court's award of attorney's fees under 42 U.S.C. § 1988. *Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir. 1995). The abuse of discretion standard applies to both a denial and a grant of attorney's fees under § 1988. *Dubuc v. Green Oak Township*, 312 F.3d 736, 744 (6th Cir. 2002).

## III. ANALYSIS

After *Bazzetta II*, Plaintiffs moved for attorney's fees under § 1988, which allows a district court in its discretion, "[i]n any action to enforce a provision of" section 1983 to award "the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (2008); *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 788 (1989) ("*Garland*"). Congress intended that courts use § 1988 to award attorney's fees "only when a party has prevailed on the merits." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam).

A plaintiff is a "'prevailing party' for attorney's fees purposes if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit."

---

[4]There appears to be some disagreement about the total of the interim fees, as the district court at least once stated that it awarded to Plaintiffs $224,036.92. The difference is a mere $45 and is not material to our decision.

5

*Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "[T]he plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Garland*, 489 U.S. at 792 (citing *Hewitt v. Helms*, 482 U.S. 755, 760-61 (1987)).  A plaintiff who wins on any significant issue — achieving a benefit it sought in bringing suit — but loses on other issues is still a prevailing party and may be entitled to some kind of fee award.  *Id*. at 791-92.  Moreover, a plaintiff obtaining injunctive relief may be a prevailing party as long as the injunction indicates probable success on the merits and is not merely procedural or a maintaining of the status quo.  *Dubuc*, 312 F.3d at 753.  But, a "plaintiff who achieves a transient victory at the threshold of an action can gain no award under [§ 1988] if, at the end of the litigation, her initial success is undone and she leaves the courthouse empty." *Sole v. Wyner*, 127 S. Ct. 2188, 2192 (2007).

Moreover, in passing § 1988 it is clear "that Congress contemplated the award of fees *pendente lite* in some cases." *Hampton*, 446 U.S. at 757 (emphasis original).  A district court may award interim attorney's fees during the pendency of litigation when that court has "entered a concrete order that determines substantial rights of the parties, meaning when a party has prevailed on the merits of at least some of his claims." *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988) (quoting *Hampton*, 446 U.S. at 757-58) (internal quotation marks omitted).

The district court determined that Plaintiffs prevailed — in terms of the interim attorney's fees — even though *Overton* and *Bazzetta III* reversed the entire legal victory Plaintiffs obtained in *Bazzetta II*.  It reasoned that the injunctive relief Plaintiffs obtained altered the status quo and that numerous Plaintiffs received "positive, lasting results."  The district court further found that, given the decisions in *Overton* and *Bazzetta III*, Plaintiffs could not qualify as a prevailing party for the

6

pendency of litigation and were therefore not entitled to the additional attorney's fees. We review each of those decisions for abuse of discretion.

## A. The interim fees

Defendants contend that the district court abused its discretion by upholding its award of attorney's fees to a party that did not prevail on the merits. As the district court properly pointed out, however, Defendants did not appeal or even protest the initial order awarding to Plaintiffs interim attorney's fees. Nor did Defendants file a motion in the district court to put the money in an escrow account until the resolution of the appeal. Instead, Defendants paid what they labeled "the attorney fees and costs that are not in dispute." Defendants now claim that their proposal to have the district court put the money in an escrow account until the resolution of their appeal of *Bazzetta II* qualifies as an objection to the order. This argument has no merit. If Defendants believed the interim fees were in any way in dispute they could have sought an immediate appeal. Defendants did not do so, but now ask this court to cure their complacency. We will not do so.

We make no statement about whether Plaintiffs are a prevailing party with respect to the interim fee award. Rather, we hold only that the district court did not abuse its discretion under § 1988 by refusing to vacate a previously granted award of attorney's fees to which Defendants not only failed to object, but agreed were "not in dispute," and which Defendants paid.

## B. The additional fees

Plaintiffs, maintaining that they were a prevailing party even after *Bazzetta II*, argue that the district court abused its discretion in vacating its August 19, 2002, award of additional attorney's fees. Unlike their response to the district court's award of interim attorney's fees, Defendants protested the award of additional attorney's fees, posted a bond, and immediately appealed the

7

district court's decision. It is clear to us — as it was to the district court in vacating the award — that *Overton* and *Bazzetta III* make it impossible to label Plaintiffs a prevailing party, as they achieved only a transient victory in *Bazzetta II* and eventually left the courthouse empty. *See Sole*, 127 S. Ct. at 2192. Therefore, the district court did not abuse its discretion.

## IV. CONCLUSION

For the foregoing reasons, we hold that the district court did not abuse its discretion in vacating the award of additional attorney's fees but failing to vacate the award of interim attorney's fees. Therefore, we **AFFIRM** the decision of the district court.