Timothy **WILLIAMS–EL, Plaintiff,**

v.

**Barry McLEMORE, et al., Defendants.**

**No. CIV. 98–74042.**

United States District Court,
E.D. Michigan,
Southern Division.

July 15, 2004.

---

Marilyn Cull, Southfield, MI, for plaintiff.

Kevin Himebaugh, Asst. Attorney General, Corrections Division, Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiff, Timothy Williams, is a state prisoner at Standish Maximum Facility in Standish, Michigan. Proceeding *pro se*, on September 18, 1998, Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated

his constitutional rights and federal law. On November 30, 1998, Plaintiff filed a second amended complaint to correct prior added names and to add four defendants.

On October 27, 1999, Defendants Warr, White, John Doe, McLemore, Bailey and Rogers filed a motion for summary judgment. On January 10, 2000, this Court granted summary judgment in their favor. Pursuant to the Sixth Circuit Court of Appeal's Order of February 1, 2001,[1] on February 8, 2001, this case was reinstated at the District Court. On August 30, 2001, Defendants Rogers, Warr, White, and McLemore again filed a motion to dismiss, and/or for summary judgment. In a Memorandum Opinion and Order of this Court dated June 27, 2002, the Court granted summary judgment as to Plaintiff's First Amendment and retaliation claims and denied summary judgment as to Plaintiff's Eighth Amendment failure to protect and ADA claims. Subsequent orders have been entered dismissing Defendants Libolt, Rogers, Wozniak, Goff and Pass. The only remaining Defendants are Warr, McLemore, Bailey and White. This case is now before this Court on Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment. For the reasons stated below, Defendants' motion must be GRANTED and Plaintiff's motion must be DENIED.

## I.

On January 13, 1998, Plaintiff was taken to the State of Michigan's Josephine McCallum Facility ("JMF"). Upon his arrival at JMF, Plaintiff handed an officer a handwritten note stating that he had enemies housed at JMF, that he feared for his life, and that he wanted protection. In the note, Plaintiff included the names of the enemies he feared. On the same day, prison staff placed Plaintiff in an administrative segregation unit at the neighboring State Prison of Southern Michigan ("SMI") until the matter could be investigated.

After two days in segregation, on January 15, 1998, Defendant Warr and Officer John Doe arrived at Plaintiff's cell to escort him to an interview with the Security Classification Committee ("SCC interview") to discuss Plaintiff's concerns. The officers attempted to handcuff Plaintiff behind his back, as is standard procedure. Plaintiff explained that he could not be handcuffed behind his back using regular sized cuffs as he suffers from a deformity in his hands and arms that causes pain when he is handcuffed in the standard manner. The officers then requested that Plaintiff produce "medical detail" documenting his need for special cuffing. Plaintiff did not produce such medical detail.

The officers then sought direction from Deputy Connie Anderson,[2] advising her of the Plaintiff's stated deformity and that Plaintiff refused to be handcuffed behind his back using regular sized cuffs. The officers later returned to Plaintiff's cell where they advised Plaintiff that if he refused to be cuffed in the standard manner he would not be allowed to attend the SCC interview. Plaintiff refused and was therefore not taken to the SCC interview.

On January 16, 1998, due to Plaintiff's failure to attend the SCC interview, Plaintiff was ordered to vacate the cell and return to JMF. Plaintiff refused, explaining that he feared for his life if he returned to JMF. Due to his failure to follow the order, the officers issued Plaintiff a misconduct ticket which resulted in a four-

---

1. *Williams v. McLemore, et al.,* 10 Fed.Appx. 241 (6th Cir. Feb. 1, 2001).

2. Deputy Connie Anderson was originally named as a Defendant to this action. She is not a party to this action, however.

teen day detention at SMI. During his segregation, Plaintiff filed a grievance alleging that he should not have received the misconduct ticket because he only incurred the ticket to prevent his return to JMF. This grievance was denied at all stages.

On February 4, 1998, Plaintiff gave officers a note stating that he planned to "get" his enemies when he returned to JMF. Plaintiff specifically referred to the inmates who were the subjects of his request for protection. Prison staff construed this note as threatening behavior and thereafter detained Plaintiff for an additional thirty days. As with the first misconduct ticket, Plaintiff filed a grievance arguing that he improperly incurred the grievance as he wrote the note only to delay his transfer to JMF. He maintained further that he was improperly denied a hearing regarding his safety concerns. The grievance was denied at steps one and two of the grievance process.

On April 3, 1998, as the third step in the grievance process, Director Kenneth McGinnis reviewed Plaintiff's second step grievance report, which was prepared by Defendant William Bailey. While Director McGinnis declined to address the misconduct tickets, he acknowledged Plaintiff's consistent complaint that he was improperly denied a hearing because he could not wear standard restraints. Director McGinnis instructed then SMI Warden Defendant Barry McLemore to insure that further action be taken on Plaintiff's safety concerns.

Following Director McGinnis' report, Plaintiff did not receive a hearing regarding his security concerns. On August 26, 1998, Plaintiff was released back into JMF general prison population. On September 25, 1998, while participating in gym activities, an inmate stabbed Plaintiff in the back five times.

Following hospitalization, and pending his transfer to a different institution, prison officials returned Plaintiff to SMI and placed him in temporary protective segregation.

On September 22, 1998, Plaintiff filed a complaint seeking injunctive and monetary relief against the following officials employed by the Michigan Department of Corrections: Warden B. McLemore, Warden John Doe, Warden Harold White, Officer H. Warr and Officer John Doe. On November 30, 1998, Plaintiff filed an amended complaint correcting the names of certain defendants and adding additional defendants. The following employees of the Michigan Department of Corrections were added: Deputy Warden Connie Anderson, Warden William Bailey, Deputy Warden Geoff, Deputy Warden Pass, Assistant Warden Dan Wozniak, Officer Rogers and Deputy Warden Libolt. Plaintiff sued the aforementioned individuals in their individual and official capacities. Plaintiff claimed that Defendants violated his Eighth Amendment rights for failing to protect him and for violating the Americans with Disabilities Act ("ADA"). All other claims have been dismissed. In addition, orders have been entered dismissing Defendants Libolt, Rogers, Wozniak, Goff and Pass. The only remaining Defendants in this action are Warr, McLemore, Bailey and White.

## II.

Summary judgment is to be granted when the moving party demonstrates that there is no genuine issue of material fact, and that the undisputed facts of record require that judgment enter, as a matter of law, on his behalf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is whether the evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505. To survive a motion for summary judgment,

the non-movant must demonstrate that there is some dispute of fact as to "an element essential to that party's case, and on which that party will bear the burden of proof at trial ...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "burden on the moving party may be discharged by ... pointing out to the district court ... that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making such a determination, this Court will examine any evidence in a light most favorable to the non-moving party. *Boyd v. Ford Motor Company,* 948 F.2d 283, 285 (6th Cir.1991).

### III.

Defendants' motion for summary judgment, addresses Plaintiff's remaining claims, all of which were filed pursuant to 42 U.S.C. § 1983. An Eighth Amendment failure to protect claim and an Americans with Disabilities Act claim. Without having to reach the merits of Defendants' argument, this case must be dismissed on procedural grounds.

### A. *Failure to exhaust administrative remedies*

Defendants argue that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA").

The PLRA, specifically, 42 U.S.C. § 1997e(a), provides that "no action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In short, this statute requires exhaustion of all available administrative remedies by a prisoner before the federal court may entertain and decide his § 1983 action. The prisoner here has sued on a number of grounds including ADA violations and fail-

ure to protect. The PLRA was in effect when Plaintiff filed his initial complaint. Several cases were decided after the enactment of the PLRA to give guidance as to how a prisoner must demonstrate that he has exhausted administrative remedies.

■ In *Brown v. Toombs,* 139 F.3d 1102 (6th Cir.1998), the Court held that "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint." *Id.* at 1104. Accordingly, a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs,* 215 F.3d 640, 641 (6th Cir.2000) (*citing Brown v. Toombs,* 139 F.3d 1102 (6th Cir.1998)). "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." *Id.* The prisoner bears the burden of establishing exhaustion of administrative remedies. *Brown v. Toombs,* 139 F.3d at 1104.

■ Further, it is important to note that exhaustion of administrative remedies must be specifically pled in the original complaint and supporting documentation must also be attached to that original complaint. In *Baxter v. Rose,* 305 F.3d 486 (6th Cir.2002), the Court held that a prisoner may not amend his complaint to cure the failure to plead the exhaustion of administrative remedies, if his action is covered by the PLRA. *Id.* at 488. In *Baxter,* the prisoner, in his complaint, alleged that

he had filed some grievances against some of the defendants, but did not allege that he had completely pursued those grievances, much less allege that he had exhausted his administrative remedies. *Id.* at 487. The magistrate judge issued a report and recommendation stating that Baxter's complaint must be dismissed for failure to state a claim on which relief could be granted because it failed to allege that Baxter had exhausted administrative remedies. *Id.* In his objection to the magistrate's report, Baxter claimed that he had in fact exhausted administrative remedies and attached the dispositions of some grievance proceedings. In a subsequent report, the magistrate recommended that the court not even reach the issue of whether Baxter actually exhausted administrative remedies because his complaint did not meet the requirement of pleading exhaustion. *Id.* The magistrate also held that under the PLRA, a prisoner-plaintiff is not permitted to amend his complaint in order to correct the pleading defect and he recommended dismissal of Baxter's action without prejudice for failing to plead the exhaustion of his administrative remedies in his initial complaint. *Id.* at 487–488. The district court adopted the magistrate's report and dismissed the complaint without prejudice; the Court of Appeals affirmed. *Id.* at 488. The 6th Circuit held that, "if the Plaintiff has exhausted his administrative remedies, he may always re-file his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." *Id.* at 489.

▮▮▮▮ After a thorough review of Plaintiff's original complaint, it has been determined that Plaintiff has not met the burden of demonstrating that he exhausted all of his available administrative remedies. A prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001). Thus, plaintiff is required to exhaust each claim as to each defendant. *Burton v. Jones,* 321 F.3d 569, 574–575 (6th Cir.2003). Plaintiff failed to specifically plead exhaustion of administrative remedies as required by the PLRA. Here, there are none of the particularized averments necessary for the Court to determine what, if any, claims have been exhausted. Further, the Court, pursuant to the holding in *Baxter v. Rose, supra,* may not look to the amended complaint or any supplemental pleadings for proof of exhaustion. Exhaustion of administrative remedies must have been pled in the original complaint.

In addition, Plaintiff did not identify Defendants Warr, Bailey, White or McLemore in his grievances nor did he grieve any particular acts performed by them. The only person related to this lawsuit and specifically named in plaintiff's grievances is Deputy Warden Connie Anderson. Deputy Warden Anderson is not a party to this lawsuit. While she was named in the complaint, Deputy Warden was never served with the Amended Complaint. When service was attempted, the summons and complaint were returned because she was no longer employed at the facility. At a minimum, Plaintiff was made aware that Deputy Warden Anderson was not a party to this action via this Court's Memorandum Opinion and Order dated June 27, 2002. To date, Plaintiff has made no attempt to remedy this situation.

Based on the aforementioned, Plaintiff's complaint must be dismissed without prejudice.

## IV.

For the reasons detailed above, as a matter of law, this case must be dismissed

without prejudice and Defendants are entitled to summary judgment on the remaining claims for Plaintiff's failure to exhaust administrative remedies.

Now, therefore,

IT IS ORDERED that Defendants' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is DENIED.

**IT IS SO ORDERED.**